**SO ORDERED.**

**SIGNED August 14, 2009.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

GLENN BREAUX
RITA BREAUX                                    CASE NO. 07-51007

        Debtors                                Chapter 13

----------------------------------------------------------------
                      REASONS FOR DECISION
----------------------------------------------------------------

The following matter comes before the court as an objection by Keith Rodriguez, the standing Chapter 13 trustee (the "Trustee"), to the amended proof of claim filed by IberiaBank. The court took this matter under submission following a hearing. After considering the arguments of counsel, the briefs, and the relevant authorities, the court is prepared to rule on the Trustee's objection.

### BACKGROUND

Glenn and Rita Breaux ("Debtors") filed for relief under Chapter 13 of the Bankruptcy Code on August 23, 2007. IberiaBank

holds a mortgage on a 2004 Sandpiper 30RLBS travel trailer owned by Debtors. On October 22, 2007, IberiaBank timely filed a proof of claim asserting an unsecured claim of $4,022.51 and a secured claim of $21,040.00 (Claim No. 9-1). IberiaBank's proof claim included a copy of the promissory note and security agreement (collectively, the "Note") underlying its claim. Debtors' Chapter 13 plan provided that Debtors would retain the trailer and pay IberiaBank $298.00 per month at 10% outside of the plan. The plan was confirmed on November 14, 2007. On September 9, 2008, IberiaBank filed a motion for relief from the automatic stay on the grounds that Debtors had failed to make payments to IberiaBank as required by the confirmed plan. An order granting IberiaBank's motion for relief was entered on September 29, 2008. The trailer was sold at a sherif's sale on February 11, 2009, for a net sale price of $6,060.16 (the $7,167.00 sales price minus $1,114.84 of expenses related to the sale). IberiaBank credited Debtors' account with the net proceeds from the sale and, on February 18, 2009, filed an amended proof of claim (the "Amended Claim") asserting an unsecured deficiency claim of $19,287 (Claim No. 13-1).

The Trustee subsequently filed an objection to IberiaBank's amended proof of claim seeking to have the claim disallowed on two grounds: (1) that the unsecured deficiency claim asserted in the amended proof of claim is essentially a "new" claim that was filed

-2-

after the bar date, and (2) that 11 U.S.C. § 506(a)(2) mandates use of "replacement value" in determining IberiaBank's deficiency claim.

## DISCUSSION

### A. Is the Amended Claim Barred as Untimely?

The first question raised by the Trustee's objection to the Amended Claim is whether the claim is barred as untimely. The original claim was timely filed. The Trustee, however, contends that the Amended Claim introduces "wholly new grounds of liability," and is therefore barred under <u>Highland's Insurance Company, Inc. v. Alliance Operating Corp. (In re Alliance Operating Corp.)</u>, 60 F.3d 1174 (5th Cir. 1995). In <u>Alliance Operating Corp.</u>, the Fifth Circuit sustained an objection to an amended proof of claim that sought to reclassify a non-priority unsecured claim as a priority claim. The Fifth Circuit concluded that the amended claim essentially set forth a new claim that introduced "wholly new grounds of liability." The court concluded that the amended claim was untimely because it was filed after the bar date.

Federal Rule of Bankruptcy Procedure 3002(c) provides that in a case under Chapter 13, "a proof of claim is timely filed if it is filed not later than ninety days after the first date set for the meeting of creditors called under Section 341(a) of the Code." Rule 3002(c) provides six exceptions to the time period for filing

-3-

proofs of claim which are not applicable to the present case. Section 502(b)(9) of the Bankruptcy Code provides that a claim shall be disallowed to the extent that "proof of such claim is not timely filed, except to the extent tardily filed as permitted under...Section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure...." 11 U.S.C. § 502(b)(9). Courts have generally held that unless an untimely claim falls within one of the exceptions of 726(a) or Federal Rule of Bankruptcy Procedure 3002(c) the claim must be disallowed. See, e.g., In re Hogan, 346 B.R. 715, 722 (Bankr. N.D. Tex. 2006) ("A bankruptcy court does not have the discretion to allow late-filed claims in a Chapter 13 case.")

The question raised in the present case, however, is whether an *amended* claim filed after the bar date is untimely and must be disallowed under section 502(b)(9). Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure expressly provide for amended claims. However, courts generally recognize the right of a creditor to file an amended claim. See, e.g., Alliance Operating Corp., 60 F.3d at 1175 (citing In re Kolstad, 928 F.2d 171, 175 (5th Cir. 1991)); In re Delmonte, 237 B.R. 132, 135 (Bankr. E.D. Tex. 1999). In Kolstad, the Fifth Circuit explained that amendments to proofs of claim should be freely allowed where the purpose is "to cure a defect in the claim as originally filed, to describe the

-4-

claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." Some courts and commentators have based the right to amend claims on a court's authority to reconsider claims under 11 U.S.C. § 502(j). See, e.g., In re Lane, 374 B.R. 830, 837 (Bankr. D. Kan. 2007); In re Disney, 386 B.R. 292, 302-303 (Bankr. D. Colo. 2008); Keith M. Lundin, Chapter 13 Bankruptcy 3d Ed. at Section 284.1 (2000 & 2004 Supp.) ("Amendment might be included in the notion of 'reconsideration' of the allowance or disallowance of a claim under 11 U.S.C. Section 502(j) and Bankruptcy Rule 3008."). Section 502(j) provides that a "claim that has been allowed or disallowed may be reconsidered for cause," and that a "reconsidered claim may be allowed or disallowed according to the equities of the case." Other courts base the right to amend proofs of claim on Rule 15 of the Federal Rules of Civil Procedure, which governs the amendment of pleadings. See, e.g., In re Unroe, 937 F.2d 346 (7th Cir. 1991) (creditor could amend a claim if it satisfies the "relation back" test in Rule 15); United States v. Johnston, 267 B.R. 717, 721-722 (N.D. Tex. 2001). While amended proofs of claim are freely allowed prior to the bar date, amendments after the bar date are more closely scrutinized to ensure that the amended claim is not an attempt to assert a new claim after the bar date. See Alliance Operating Corp., 60 F.3d at 1175 ("Bar dates ... are not to be

-5-

vitiated by amendments, and the courts must ensure that the amendments do not introduce wholly new grounds of liability.")

In the present case, the Amended Claim asserts an unsecured deficiency claim arising from the sale of the trailer after an order granting relief from the automatic stay. Some courts have held that an amended proof of claim that seeks to assert an unsecured deficiency claim after the liquidation of the creditor's collateral amounts to a new claim that cannot be asserted after the bar date. See, e.g., In re McBride, 337 B.R. 451, 460 (Bankr. N.D. N.Y. 2006). Other courts, however, have held that a post-bar date amendment to assert an unsecured deficiency claim is permissible. See Delmonte 237 B.R. 132, 135 (Bankr. E.D. Tex. 1999). In Delmonte, the court reasoned that the deficiency claim "relates to and arises out of the same transaction as the original claim." Id. at 136; see also, Lundin, Chapter 13 Bankruptcy 3d Ed. at Section 284.1 (noting that "one common example for appropriate use of an amended claim in a chapter 13 case might be the claim for a deficiency when collateral is repossessed and disposed of after confirmation.") After considering the relevant authorities, the court agrees with IberiaBank that the Amended Claim relates back to the timely-filed original claim. IberiaBank's right to a deficiency claim is grounded on the same facts and transactions reflected in the original proof of claim – namely the Note and

-6-

IberiaBank's rights under the Note and Louisiana law. The events triggering IberiaBank's right to a deficiency claim under state law occurred post-confirmation when (1) Debtors failed to make payments as required under the confirmed plan, (2) the court granted IberiaBank relief from the stay, and (3) IberiaBank exercised its state-law remedies. While neither the plan nor the proof of claim expressly reserves IberiaBank's right to seek a deficiency claim (as in the <u>Delmonte</u> case), the proof of claim references and attaches the Note. Accordingly, under these circumstances, a specific statement reserving the right to assert a deficiency claim under state law is duplicative and is not required for IberiaBank to assert its deficiency claim.

Furthermore, the <u>Alliance Operating Corp</u>. case is distinguishable from the present case. In that case, Highlands Insurance Co. filed a general unsecured claim for $157,008 for "workmen's compensation insurance premiums." 60 F.3d at 1175. Highlands then amended its proof of claim after the bar date to assert an administrative expense claim of $28,678, a priority claim of $97,505, and a general unsecured claim of $71,595. The court rejected the amended proof of claim on the grounds that an amendment that changes "the nature of the claim from an unsecured status to a priority status [s]ets forth a new claim." <u>Id.</u> The court noted that the change in status did not result from any

-7-

events occurring after the bar date and was not based on any facts set forth in the original timely-filed proof of claim. Id. at 1175-76. In contrast to Alliance Operating Corp., the deficiency claim asserted by IberiaBank resulted from an event occurring after the bar date: the court's order for relief and IberiaBank's disposition of the trailer pursuant to state law. Moreover, the right to a deficiency claim, although not triggered at the time of the filing of the original proof of claim, is inherent in the facts and events asserted in the original proof of claim. In re Kolstad, 928 F.2d at 175. In sum, the Amended Claim relates back to the filing of IberiaBank's timely original proof of claim.[1]

**B.   What is the Amount of the Deficiency Claim?**

The Trustee next challenges IberiaBank's calculation of its deficiency claim. IberiaBank calculated its deficiency claim by subtracting the net proceeds from the sale of the trailer ($6,060.16) from its remaining claim of $25,348.64 for a total unsecured deficiency claim of $19,287.88. The Trustee takes the position that section 506(a)(2) of the Code governs the calculation of IberiaBank's deficiency claim. See 11 U.S.C. Section 506(a)(2).

---

[1]   To the extent that an amended proof of claim is grounded on the reconsideration of a previously allowed secured claim under section 502(j), a court may consider the equities of the case in determining whether to allow an amended claim. The parties in the instant case have not raised any arguments under section 502(j).

-8-

Specifically, the Trustee contends that Section 506(a)(2) requires that IberiaBank's deficiency claim be calculated based on the "replacement value" of the trailer as opposed to the proceeds from the sheriff's sale.

Section 506(a) governs the extent to which a claim is "secured" under the Bankruptcy Code.  Section 506(a)(1) provides that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, **is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property**, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. **Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest**.

11 U.S.C. § 506(a)(1) (emphasis added).  Under section 506(a)(1), a claim is secured to the extent of the value of the "property in which the estate has an interest" that serves as collateral for the claim.  The remainder of the creditor's claim is treated as an unsecured claim.  Valuation of collateral is based on the proposed "disposition or use" of the collateral.  If a Chapter 13 debtor proposes to retain the collateral and pay the secured creditor through a plan pursuant to section 1325(a)(5)(B), "replacement

-9-

value" is the proper standard of valuation. <u>Associates Commercial Corporation v. Rash</u>, 520 U.S. 953 (1997). If the proposed disposition is liquidation, many courts rely on a measure of value that approximates liquidation value. The 2005 amendments (the "2005 Act") to the Bankruptcy Code amended section 506(a) by adding 506(a)(2), which provides that:

> If the debtor is an individual in a case under chapter 7 or 13, **such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.** With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C. § 502(a)(2) (emphasis added). Unlike section 506(a)(1), section 506(a)(2) does not base valuation on the proposed use or disposition of the collateral. Accordingly, the provision appears to mandate a replacement value standard across the board to valuations of "personal property securing an allowed claim" in cases under chapter 7 or 13 regardless of the proposed disposition. <u>See</u> <u>In re Pruitt</u>, 401 B.R. 546, 558 n. 17 (Bankr. Conn. 2009) (replacement value applies under section 506(a)(2) regardless of proposed disposition). The legislative history of section 506(a)(2) is limited and does not provide much guidance on the intended purpose of section 506(a)(2). The amendment was included

-10-

in section 327 of the 2005 Act under the caption "Fair Valuation of Collateral." Pub. Law No. 109-8 § 327. The House Report discusses the amendment under the caption "Protections for Secured Creditors" and explains that the provision "clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing." H.R. Rep. No. 109-31 pt. 1, at 17 (2005).

Applying section 506(a)(2) to the present case, the Trustee contends that IberiaBank's unsecured deficiency claim must be calculated using the higher "replacement value" of the trailer under section 506(a)(2), not the lower value of the proceeds obtained through the sheriff's sale. Use of a replacement value standard would likely reduce IberiaBank's unsecured deficiency claim. The court disagrees with the Trustee's position. First, it is not clear that the valuation standards of section 506(a)(1) or (2) would apply where, as here, the court has granted a creditor relief from the stay and the collateral has been sold pursuant to state law. Specifically, the sale discharged IberiaBank's security interest in the trailer, and IberiaBank was no longer secured under section 506(a). See La. R.S. 10:9-617 (2002). Any post-sale rights retained by IberiaBank – including the right to a deficiency claim – are grounded on the Note and state law. In short, state law,

-11-

not section 506(a)(1) or (2), governs the calculation of IberiaBank's post-sale deficiency claim. See, e.g., La. R.S. 10:9-615, 6:966 (2002). The calculation of IberiaBank's deficiency claim under state law is properly based on the net sale price of the trailer, not a valuation using a hypothetical "replacement value" standard.

Furthermore, prior to the enactment of the 2005 Act, courts generally held that the value realized from an actual sale is conclusive as to the value of the collateral if the sale complied with state law. Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.), 151 B.R. 931, 935 (9th Cir. BAP 1993); In re Dowco Petroleum, Inc., 137 B.R. 207, 209-11 (Bankr. E.D. Tex. 1992) (using sale price); Noland v. Williamson (In re Williamson), 94 B.R. 958, 966 (Bankr. S.D. Ohio 1988) (same); In re Mitchell, 81 B.R. 171, 173 (Bankr. D. Colo. 1988) (same); In re Laza, 69 B.R. 669, 670 (Bankr. E.D.N.Y.1987)(same). Nothing in 506(a)(2) or the legislative history of the 2005 Act indicates that this provision was intended to change prior law in this regard, or to displace state law rules governing the calculation of IberiaBank's deficiency claim. As the Fifth Circuit recently held, "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

-12-

Code. [W]e generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are explicitly disallowed." <u>DaimlerChrysler Financial Services Americas LLC v. Miller,</u> 570 F.3d 633, 640 (5th Cir. 2009). No courts have expressly addressed the application of section 506(a)(2) to cases where collateral has been sold after an order granting relief from the automatic stay. However, at least one of the major bankruptcy treatises opines that section 506(a)(2) does not change prior law, and that the price obtained through an actual sale determines a creditor's deficiency claim. <u>See</u> Lawrence King, et al., 4 Collier on Bankruptcy ¶ 506.03[6][b] (2005); <u>see also</u> <u>In re Perry</u>, 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008) (creditor's "unsecured claim will be determined by the results of the foreclosure sale" as long as the sale is conducted pursuant to applicable state law). Accordingly, the court overrules the Trustee's objection with respect to the application of section 506(a)(2).[2]

### CONCLUSION

For the reasons stated above, the court overrules the Trustee's objection to IberiaBank's claim number 13-1. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

### ###

---

[2] The Trustee has not challenged the conduct or terms of the sale under state law.

-13-